Vicki J. Maniatis
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN**
100 Garden City Plaza, Suite 500
Garden City, NY  11530
(516) 640-3913
vmaniatis@milberg.com

[Additional counsel on signature page]

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAUREEN CARRIGAN, KERRY LAMONS, NANCY ZIDE, and KHARI WHEELER, on behalf of themselves and a class of all others similarly situated,<br><br>                                 Plaintiffs,<br>v.<br><br>BAYER HEALTHCARE LLC,<br><br>                                 Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Maureen Carrigan, Kerry Lamons, Nancy Zide, and Khari Wheeler ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action lawsuit against Defendant Bayer HealthCare LLC ("Bayer" or "Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

## INTRODUCTION

1.      This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of its Alka-Seltzer-branded "Non-Drowsy" over-the-counter cold and flu medicines that contain Dextromethorphan Hydrobromide ("the "Non-Drowsy Products").[1]

2.      The Non-Drowsy Products state prominently on the front of their product packaging that they are "Non-Drowsy" and "Day" products.



---

[1] The Non-Drowsy Products include: Alka-Seltzer Plus – Severe Cold PowerFast Fizz Non-Drowsy Citrus Effervescent Tablets; Alka-Seltzer – Severe Cold PowerFast Fizz Day Non-Drowsy Citrus Effervescent Tablets, Alka-Seltzer Plus – Cold & Flu PowerMAX Gels Day Non-Drowsy, Alka-Seltzer Plus – Maximum Strength Cold & Flu Day Non-Drowsy Liquid Gels; Alka-Seltzer Plus – Cold Day Non-Drowsy Effervescent Tablets, Alka-Seltzer Plus – Severe Cold PowerFast Fizz Day Non-Drowsy Citrus Effervescent Tablets; Day/Night Severe Cold and Flu (combo pack); and Alka-Seltzer Plus – Cough, Mucus & Congestion PowerMAX Gels Day Non-Drowsy.

3.     By prominently labeling the products as "Non-Drowsy," Defendant led Plaintiffs and other consumers to believe that the Non-Drowsy Products do not cause drowsiness, and that drowsiness is not a side effect of the products.

4.     Defendant also led Plaintiffs and other consumers to believe that the Non-Drowsy Products are for use during the "Day" and intended to be used during waking hours.

5.     However, one of the active ingredients in the Non-Drowsy Products is Dextromethorphan Hydrobromide ("DM HBr"). While the average consumer may not be aware, drowsiness is a documented side effect of DM HBr at dosages recommended by Defendant in respect to the Non-Drowsy Products. Authorities such as the National Library of Medicine and Mayo Clinic list drowsiness as a side effect of this ingredient.[2]

6.     Plaintiffs and Class members purchased the Non-Drowsy Products with the expectation that the products would not cause drowsiness and that they were intended to be used during waking hours. Because Defendant sold products to consumers that cause drowsiness, Plaintiffs and the Classes were deprived of the benefit of their bargain.

7.     Accordingly, Plaintiffs bring this action on behalf of themselves and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*; (iii) violations of California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.* (iv) violations of California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, (v) violations of California's Unfair Competition Law ("UCL"), Bus. &

---

[2]Dextromethorphan:     MedlinePlus     Drug     Information,     National     Library     of     Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022); *Mayo Clinic, Drugs and Supplements Dextromethorphan (Oral Route)*, https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/drg-20068661?p=1 (last accessed March 23, 2022).

Prof. Code §§ 17200, *et seq*., (vi) violations of Michigan's Consumer Protection Act ("MCPA"), Mich. Comp. Laws Ann. §§ 17500, *et seq*.; (vii) unjust enrichment; (viii) negligent misrepresentation; and (ix) intentional misrepresentation.

## PARTIES

8.      Plaintiff Maureen Carrigan is a resident and citizen of the state of Florida. Beginning in or around February 2021, approximately once or twice per year, Plaintiff Carrigan purchased Alka-Seltzer Plus® Maximum Strength Day Cold and Flu liquid gels from Walgreens and Walmart retail stores located in Lauderdale Lakes, Florida.  She most recently purchased the product in February of 2022 at Walmart.  Prior to February 2021, Plaintiff Carrigan purchased the product several times from a Walgreens retail store located in New Lenox, Illinois. When purchasing the Non-Drowsy Products, Plaintiff Carrigan reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the "Non-Drowsy" "Day" products would not cause drowsiness and could be used during the day. Plaintiff Carrigan relied on these representations and warranties in deciding to purchase the Non-Drowsy Products and these representations and warranties were part of the basis of the bargain in that she would not have purchased the Non-Drowsy Products if she had known that they would cause drowsiness. When Plaintiff Carrigan took the medication as directed by Defendant, she became unexpectedly drowsy.  Plaintiff Carrigan was not on any other medication that would have caused drowsiness, and there was no other potential cause for this drowsiness, aside from the ingredients in the medication.  Plaintiff Carrigan would purchase the Non-Drowsy Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiff Carrigan, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

4

9.      Plaintiff Kerry Lamons is a resident and citizen of the state of California. Beginning in or around 2019, Plaintiff Lamons has regularly purchased the Non-Drowsy Products, including Alka-Seltzer Plus Maximum Strength Day Cough, Mucus and Congestion and Alka-Seltzer Plus Maximum Strength Day Cold and Flu Powermax Gels several times per year.  Plaintiff Lamons purchased the products from a CVS retail store located in La Quinta, California. When purchasing the Non-Drowsy Products, Plaintiff Lamons reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the "Non-Drowsy" "Day" products would not cause drowsiness and could be used during the day. Plaintiff Lamons relied on these representations and warranties in deciding to purchase the Non-Drowsy Products and these representations and warranties were part of the basis of the bargain in that she would not have purchased the Non-Drowsy Products if she had known that they would cause drowsiness. When Plaintiff Lamons took the medication as directed by Defendant, she became unexpectedly drowsy.  Plaintiff Lamons was not on any other medication that would have caused drowsiness, and there was no other potential cause for this drowsiness, aside from the ingredients in the medication.  Plaintiff Lamons would purchase the Non-Drowsy Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiff Lamons, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

10.      Plaintiff Nancy Zide is a resident and citizen of the state of California.  Since in or around 2019, Plaintiff Zide purchased Alka-Seltzer Plus Maximum Strength Day Cough, Mucus and Congestion approximately two or three times.  Plaintiff Zide purchased the products from a Walgreens retail store located in Indio, California. When purchasing the Non-Drowsy Products, Plaintiff Zide reviewed the accompanying labels and disclosures, and understood them as

representations and warranties by Defendant that the "Non-Drowsy" "Day" products would not cause drowsiness and could be used during the day. Plaintiff Zide relied on these representations and warranties in deciding to purchase the Non-Drowsy Products and these representations and warranties were part of the basis of the bargain in that she would not have purchased the Non-Drowsy Products if she had known that they would cause drowsiness. When Plaintiff Zide took the medication as directed by Defendant, she became unexpectedly drowsy. Plaintiff Zide was not on any other medication that would have caused drowsiness, and there was no other potential cause for this drowsiness, aside from the ingredients in the medication. Plaintiff Zide would purchase the Non-Drowsy Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised). Plaintiff Zide, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

11.     Plaintiff Khari Wheeler is a resident and citizen of the state of Michigan. In the summer of 2021, in or around December of 2021, and in March of 2022, Plaintiff Wheeler purchased Non-Drowsy Products, including an Alka-Seltzer Plus® Maximum Strength Sinus Congestion & Pain combo pack from a Walmart retail store located in Dearborn, Michigan. When purchasing the Non-Drowsy Products, Plaintiff Wheeler reviewed the accompanying labels and disclosures, and understood them as representations and warranties by Defendant that the "Non-Drowsy" "Day" products would not cause drowsiness and could be used during the day. Plaintiff Wheeler relied on these representations and warranties in deciding to purchase the Non-Drowsy Products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Non-Drowsy Products if he had known that they would cause drowsiness. When Plaintiff Wheeler took the medication as directed by Defendant, he became unexpectedly drowsy. Plaintiff Wheeler was not on any other medication that would have caused

drowsiness, and there was no other potential cause for this drowsiness, aside from the ingredients in the medication.  Plaintiff Wheeler would purchase the Non-Drowsy Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiff Wheeler, however, faces an imminent threat of harm because he will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

12.     Defendant Bayer HealthCare LLC is a Delaware company with its principal place of business in Whippany, New Jersey. At all relevant times hereto, Defendant was engaged in manufacturing, marketing, distributing, and advertising the Non-Drowsy Products throughout the United States. Defendant created and/or authorized the false and misleading advertising and labeling of the Non-Drowsy Products.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than one hundred (100) Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

14.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this State and regularly sells and markets its products in this State. Defendant derives substantial revenue from sales of its products in this State, with knowledge that its products are being marketed and sold for use in this State.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered here and conducts substantial business in this District.

**FACTUAL ALLEGATIONS**

**A.**      **Defendant Manufactures, Distributes, Markets, and Sells the Non-Drowsy Products**

16.      Defendant manufactures, distributes, markets, and sells the Non-Drowsy Products.

17.      Each of the Non-Drowsy Products prominently state on its label that the product is "Non-Drowsy" and for "Day" use.

18.      For example, below is an image of Bayer's Alka-Seltzer Plus Cold & Flu PowerMAX Gels Day Non-Drowsy product label.



19.      Similarly, the Alka-Seltzer Plus – Severe Cold PowerFast Fizz product label includes the same representations.



20.     The Non-Drowsy Products are also sold in combo packs with "Night" products. For example, below is an image of the Alka-Seltzer Plus Severe Cold PowerFast Fizz Non-Drowsy Effervescent Tablet combo pack which includes "Day" and "Night" formulations.



21.     The "Day" product includes the "Non-Drowsy" representation, while the "Night" product is silent to Non-Drowsy characteristics.

22.     Both the "Day" and "Night" products contain DM HBr, the ingredient in the Non-Drowsy Products that causes drowsiness.

23.     The "Non-Drowsy" and "Day" representations are materially the same across the various Non-Drowsy Products.

24.     Based on the prominent "Non-Drowsy" and "Day" representations included on the front of each product, a reasonable consumer would believe that the products do not cause drowsiness and that drowsiness is not a side effect of the product.

**B.      Defendant's False and Misleading Advertising Campaign**

25.     One of the active ingredients in the Non-Drowsy Products is DM HBr.

26.     Drowsiness is a well-documented side effect of DM HBr.

27.     For example, the Mayo Clinic and the National Library of Medicine list drowsiness as a side-effect of the ingredient.[3]

28.     Manufacturers and distributors know that DM HBr causes drowsiness as their safety data sheets ("SDS") explicitly state that DM HBr causes and may cause drowsiness.

29.     According to Pfizer's safety datasheet for their Robitussin cough medicine, "Common adverse reactions associated with the clinical use of dextromethorphan hydrobromide include drowsiness, dizziness, and nausea and vomiting."[4]

---

[3] *Dextromethorphan:    MedlinePlus    Drug    Information,    National    Library    of    Medicine*, https://medlineplus.gov/druginfo/meds/a682492.html (last accessed March 23, 2022); *Mayo Clinic, Drugs and Supplements Dextromethorphan (Oral Route)*, https://www.mayoclinic.org/drugs-supplements/dextromethorphan-oral-route/side-effects/drg-20068661?p=1 (last accessed March 23, 2022).
[4] *Pfizer, Safety Data Sheet*, https://imgcdn.mckesson.com/CumulusWeb/Click_and_learn/SDS_9PFIZ_ROBITUSSIN_DM_SYRP_ADLT_CO UGH_CHEST_HONEY_4OZ.pdf (last accessed March 23, 2022).

30.     Santa Cruz Biotechnology Inc. lists acute health effects on their SDS following the consumption of DM HBr such as "Drowsiness, dizziness, excitation, mental confusion, and gastro-intestinal disturbances have been described following dextromethorphan. Administration."[5]

31.     Peer-reviewed studies have also confirmed that drowsiness is a side effect of DM HBr at the recommended dosages.  For example, one study found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like DM HBr, and that 10.4% of users of products containing DM HBr develop drowsiness within three days of starting treatment with DM HBr cough medicine. [6, 7] The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And the patients in this clinical study were given an even smaller dosage of DM HBr (15 mg three times a day) than the recommended dose found in Non- Drowsy products.[8]

32.     In other words, sedation is a well-known adverse event of this ingredient.[9]

33.     In fact, the Federal Aviation Administration prohibits pilots from flying after taking medicines that contain dextromethorphan. The document titled, "What Over-the-Counter (OTC) medications can I take and still be safe to fly" lists DayQuil as a "No Go" product because it

---

[5] Dextromethorphan Hydrobromide, Material Safety Data Sheet, https://datasheets.scbt.com/sc-204716.pdf (last accessed March 23, 2022).

[6] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997).

[7] The study reports this side effect as "somnolence." Somnolence means "the quality or state of being drowsy." Merriam Webster Dictionary, https://www.merriamwebster.com/dictionary/somnolence

[8] For example, Alka-Seltzer Plus Severe Cold & Flu PowerFast Fizz Tables contain 10 mg of DM HBr per softgel and the recommended dosage is 2 softgels (20 mg of DM HBr) every 4 hours. https://www.alkaseltzer.com/sites/g/files/vrxlpx10856/files/2021-02/Web%20DFL-ASP%20Severe%20Cold%20%20Flu%20PFF%20%28APAP%29.pdf.

[9] See Martin, E., Narjoz, C., Decleves, X., Labat, L., Lambert, C., Loriot, M. A., ... & Pickering, G. (2019). Dextromethorphan analgesia in a human experimental model of hyperalgesia. *Anesthesiology*, *131*(2), 356-368; *see also* Siu, A. and Drachtman, R. (2007), Dextromethorphan: A Review of N-methyl-d-aspartate Receptor Antagonist in the Management of Pain. CNS Drug Reviews, 13: 96-106. https://doi.org/10.1111/j.1527-3458.2007.00006.x ("DM is used clinically in the form of salt, dextromethorphan hydrobromide…The majority of DM's adverse effects occur at the level of the CNS. Neurologic toxicity associated with DM includes dystonia, fatigue, drowsiness, and dizziness.").

contains dextromethorphan.[10] The Non-Drowsy Products and DayQuil both contain this ingredient.

34.    The Non-Drowsy Products do not qualify the voluntary deceptive statements "Non-Drowsy" and "Day" with a disclaimer or qualification anywhere on the packaging; in other words, they do not disclose anywhere on the packaging that even though the Non-Drowsy Products affirmatively claim to be "Non-Drowsy" and "Day," they actually do or can cause drowsiness, or that drowsiness is a side effect. Accordingly, there is nothing on the packaging that could possibly cure or ameliorate the deception caused by the affirmative "Non-Drowsy" and "Day" representations.[11]

35.    As such, Defendant's advertising campaign is false and misleading.

36.    The Food and Drug Administration ("FDA") prohibits labeling drugs with "false or misleading" statements. 21 C.F.R. § 201.6. It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

37.    This case is about Defendant's affirmative, "Non-Drowsy" representation on the Non-Drowsy Product labels. No FDA regulation allows antitussives containing DM HBr to be labelled "Non-Drowsy" and the FDA has never considered whether this claim is false and misleading.

38.    Based on the fact that Defendant labelled the Non-Drowsy Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.

---

[10] *Federal Aviation Administration, What Over-the-Counter (OTC) medications can I take and still be safe to fly* https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf (last accessed March 23, 2022).

[11] To be clear, Plaintiffs do not contend that Defendant has a duty to warn that their products cause drowsiness in the absence of any affirmative misrepresentation; they contend that it is deceptive to affirmatively label the Non-Drowsy Products "Non-Drowsy" and "Day."

Similarly, a reasonable consumer would expect that drowsiness is not a side effect of the products. Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy."[12]  This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness."

39.     While the Federal Regulations relating to the labelling of antitussive drug products do not require products with DM HBr to include an affirmative "drowsiness" warning, *see generally*, 21 C.F.R. § 341.74, Defendant could have simply omitted the false and misleading "Non-Drowsy" representations from the product labels.

40.     Defendant knows that the "Non-Drowsy" and "Day" representations are false and misleading. In fact, Defendant sells products that contain DM HBr but are not advertised as "Non-Drowsy." For example, Coricidin is a cold symptom relief product for people with high blood pressure. Coricidin is manufactured, sold, and advertised by Defendant. This product contains DM HBr and omits false representations by not labeling the product as "Non-Drowsy."

---

[12] How to read over the counter (OTC) drug labels, Consumer Reports,
https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-druglabels/index.htm



41.     Or, if Defendant wanted to differentiate its Day products from its Night products, it could have indicated on the product label that the Day products would cause *less* drowsiness than the Night products. For example, the below Dramamine product is advertised as a "less drowsy" formula.



42.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a second example, if a consumer is planning to engage in activities that require them to be alert, or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving is dangerous.

43.     Because Defendant makes and sells the Non-Drowsy Products, Defendant researched the known and common side effects of DM HBr.  This is diligence that a large company like Defendant would do when selling a drug.  As a result, Defendant knew that DM HBr causes drowsiness.  Furthermore, Defendant controls its labeling, knowingly put on the "Non-Drowsy" and "Day" representations, and knows the plain meaning of "Non-Drowsy."  Finally, it is standard

practice in the industry to test labeling with consumers, and Defendant's testing would confirm that "Non-Drowsy" and "Day" representations are misleading.  For these reasons, Defendant knew that its labeling was false and misleading, or was reckless or willfully blind to this fact.  And as alleged above, Defendant intended that consumers would rely on the "Non-Drowsy" and "Day" labeling, so that consumers would purchase more products and pay a price premium.

44.     Defendant's false statements increased the demand for its Non-Drowsy Products and allowed Defendant to charge a price premium.  As explained above, consumers specifically value the "Non-Drowsy" claim because consumers demand cough medicine that will not make them drowsy (e.g., during the day, at work or while driving).  As a result, Defendant was able to charge more for these products than it would have been able to had the labeling been truthful. Accordingly, as a direct result of Defendant's false statements, Defendant was able to charge a price premium for these products.  As purchasers, Plaintiffs and each class member paid this price premium and sustained economic injury.

45.     For example, a box of Alka-Seltzer Plus Severe Cold & Flu PowerFast Fizz Citrus Effervescent Tablets is currently priced at $6.62 on the Alka-Seltzer website.  This price is artificially inflated by the misleading "Non-Drowsy" claim.  If this misleading claim were removed, demand would drop, which in turn would reduce the market price.  This price premium can be quantified (i.e., a dollar figure measured) using expert economic analysis of data that includes, among other things, sales and pricing information uniquely within the possession of Defendant.

46.     In addition, because the Non-Drowsy Products actually do cause drowsiness, Plaintiffs and each class member did not get what they paid for: a cough medicine that does not cause drowsiness.  Instead, they received something that is worth less: a cough medicine that does

16

cause drowsiness.  Plaintiffs and each class member sustained an economic injury for this additional reason, *i.e.*, they received something worth less than the price they paid for it.

47.     Moreover, the Non-Drowsy Products are sold specifically for use in situations where it is not acceptable for consumers to become drowsy (e.g., while driving, working, or supervising children).  As a result, the products that Plaintiffs and each class member did receive in exchange for the price they paid—Non-Drowsy Products that cause drowsiness—were not suitable for, and were thus worthless for, their intended purpose.  The economic injury Plaintiffs and each class member sustained consists of the entire purchase price of the products, because what they received was worthless for its intended use.

48.     Defendant intended that consumers would rely on the "Non-Drowsy" and "Day" labeling so that consumers would purchase more products, pay a price premium, and buy them as alternatives to the "Night" products. The product labels do not warn consumers that the products cause drowsiness, may cause drowsiness, or you may get drowsy from the usage of such products thereby creating an unreasonable risk of harm as a result of the affirmative deceptive "Non-Drowsy" and "Day" statements, which are not qualified anywhere on the packaging.

**C.     Consumers Have Been Harmed By Defendant's False Representations**

49.     Defendant knew, or should have known, that Defendant's Non-Drowsy Products are misbranded because they contain DM HBr which causes drowsiness in consumers.

50.     Defendant knew, or should have known, that Defendant misrepresented material facts concerning the "Non-Drowsy" and "Day" representations when in fact the Non-Drowsy Products contained an ingredient that causes drowsiness.

51.     Defendant knew, or should have known, the representations and statements through the product labeling prescribes dangerous uses.

52.     Plaintiffs would not have purchased the Non-Drowsy Products, or would have paid less for them, had the Non-Drowsy Products that Plaintiffs purchased been truthfully and accurately labeled.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs brings this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Non-Drowsy Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

54.     Plaintiff Carrigan brings this action individually and on behalf of the following Florida subclass:

> All persons who purchased one or more of Defendant's Non-Drowsy Products in the state of Florida for personal/household use within any applicable limitations (the "Florida Subclass").

55.     Plaintiffs Lamons and Zide bring this action individually and on behalf of the following California subclass:

> All persons who purchased one or more of Defendant's Non-Drowsy Products in the state of California for personal/household use within any applicable limitations (the "California Subclass").

56.     Plaintiff Wheeler brings this action individually and on behalf of the following Michigan subclass:

> All persons who purchased one or more of Defendant's Non-Drowsy Products in the state of Michigan for personal/household use within any applicable limitations (the "Michigan Subclass").

57.     Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and its current or former employees, officers,

18

and directors; and (3) individuals who allege personal bodily injury resulting from the use of Non-Drowsy Products.

58.     Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

59.     Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

a.   Whether the Non-Drowsy Products cause drowsiness;

b.   Whether Defendant breached express warranties;

c.   Whether Defendant's labelling of the Non-Drowsy Products as "Non-Drowsy" and "Day" is false, misleading, and/or deceptive;

d.   Whether Defendant violated the state consumer protection statutes alleged herein;

e.   Whether Defendant was unjustly enriched; and

f.   The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

60.     Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased the Non-Drowsy Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

61.     Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

62.     Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

63.     Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications,

or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I

**BREACH OF EXPRESS WARRANTY**
**(On behalf of Plaintiffs Wheeler and Carrigan and the Class (or alternatively, the Florida and Michigan Subclasses) against Defendant)**

64.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

65.     Defendant marketed and sold its Non-Drowsy Products in the stream of commerce with the intent that its Non-Drowsy Products would be purchased by Plaintiffs and the Classes.

66.     In connection with the sale of the Non-Drowsy Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Non-Drowsy Products were "Non-Drowsy" and were "Day" products. These were affirmations of fact about the products (i.e., a description of the effects) and a promise relating to the goods.

67.     In fact, the Non-Drowsy Products do not conform to the above referenced representations because, as alleged in detail above, they cause drowsiness. Thus, the warranty was breached.

68.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and the Class members have been injured and harmed because they would not have purchased the products had they known that the Non-Drowsy Products cause drowsiness; or (2) they overpaid for the Non-Drowsy Products because they are sold at a premium due to the warranties.

69.     On April 4, 2022 and April 8, 2022, prior to filing this action, Defendant was served with pre-suit notice letters pursuant to U.C.C. § 2-607.

## COUNT II

**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Fla. Stat. § 501.201, *et seq.*)**
**(on behalf of Plaintiff Carrigan and the Florida Subclass)**

70.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

71.     This claim is brought by Plaintiff Carrigan against Defendant on behalf of herself and the Florida Subclass.

72.     Plaintiff Carrigan and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

73.     Defendant advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly affecting the people of Florida.

74.     Defendant engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

75.     Defendant's false representations as alleged herein were material because they were likely to deceive reasonable consumers.

76.     In the course of its trade, Defendant violated the FDUTPA by knowingly and intentionally misrepresenting material facts on the labels for its Non-Drowsy Products relating to the appropriate use and "Non-Drowsy" nature of the products. Defendant falsely advertised the Non-Drowsy Products by using false and misleading statements to promote the sale of the Non-Drowsy Products, as described above, including but not limited to, representing that the Non-Drowsy Products were "Non-drowsy" and were for "Day" use.

77.    Specifically, by knowingly and intentionally misrepresenting material facts regarding the Non-Drowsy Products, Defendant engaged in one or more unfair or deceptive business practices prohibited by the FDUTPA.

78.    Plaintiff Carrigan saw, read, and reasonably relied on the uniform misrepresentations when purchasing Non-Drowsy Products. Defendant's misrepresentations were a substantial factor in Plaintiff Carrigan's purchase decisions.

79.    A reasonable consumer would consider Defendant's representations relating to the appropriate use and "non-drowsy" nature of the products as important in deciding whether to buy the Non-Drowsy Products.

80.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff Carrigan.

81.    Plaintiff Carrigan and Florida Subclass members acted reasonably in relying on Defendant's misrepresentations, the truth of which they could not have discovered.

82.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff Carrigan and members of the Florida Subclass have suffered injury and actual out-of- pocket losses because: (a) Plaintiff Carrigan and members of the Florida Subclass would not have purchased the Non-Drowsy Products if they had known the true facts regarding the products; (b) Plaintiff Carrigan and members of the Florida Subclass paid a price premium due to the misrepresentations about the products; and (c) the Non-Drowsy Products did not have the promised quality, effectiveness, or value.

83.    Plaintiff Carrigan and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21;

23

declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## COUNT III

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**
**Business & Professional Code §§ 17500, *et seq.***
**(on behalf of Plaintiffs Lamons and Zide and the California Subclass)**

84.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

85.    Plaintiffs Lamons and Zide bring this cause of action on behalf of themselves and members of the California Subclass.

86.    California's FAL, (Bus. & Prof. Code §§ 17500, *et seq*.) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,…in any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning…personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

87.    Defendant committed acts of false advertising, as defined by § 17500, by using false and misleading statements to promote the sale of the Non-Drowsy Products, as described above, including but not limited to, representing that the Non-Drowsy Products were non-drowsy and were intended to be used during waking hours.

88.    Defendant's representations were likely to deceive, and did deceive, Plaintiffs Lamons and Zide and reasonable California Subclass members.

89.    Defendant knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

90.     Defendant's misrepresentations were intended to induce reliance, and Plaintiffs Lamons and Zide saw, read and reasonably relied on them when purchasing Non-Drowsy Products. Defendant's misrepresentations were a substantial factor in Plaintiffs Lamons and Zide's purchase decisions.

91.     In addition, reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Products.

92.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs Lamons and Zide.

93.     As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiffs Lamons and Zide and members of the California Subclass have suffered injury and actual out-of pocket losses because: (a) Plaintiffs Lamons and Zide and members of the California Subclass would not have purchased the Non-Drowsy Products if they had known the true facts regarding the products; (b) Plaintiffs Lamons and Zide and members of the California Subclass paid a price premium due to the misrepresentations about the products; and (c) the Non-Drowsy did not have the promised quality, effectiveness, or value.

94.     Plaintiffs Lamons and Zide bring this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein. Plaintiffs Lamons and Zide and members of the California Subclass are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs.

**COUNT IV**

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
("CLRA") Civil Code §§ 1750, *et seq.*
(on behalf of Plaintiffs Lamons and Zide and the California Subclass)**

95.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

96.     Plaintiffs Lamons and Zide bring this cause of action on behalf of themselves and members of the California Subclass.

97.     Plaintiffs Lamons and Zide and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

98.     Plaintiffs Lamons and Zide, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

99.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

100.    As alleged more fully above, Defendant violated the CLRA by falsely representing to Plaintiffs Lamons and Zide and the other members of the California Subclass that the Non-Drowsy Products do not cause drowsiness, and are intended to be used during waking hours, when in fact, the products do cause drowsiness.

101.    As a result of engaging in such conduct, Defendant has violated California Civil Code §1770(a)(5), (a)(7), and (a)(9).

102.    Defendant's representations were likely to deceive, and did deceive, Plaintiffs Lamons and Zide and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

103.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs Lamons and Zide saw, read, and reasonably relied on them when purchasing Non-Drowsy Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

104.    In addition, reliance can be inferred because Defendant's misrepresentations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Products.

105.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs Lamons and Zide.

106.    Plaintiffs Lamons and Zide and the California Subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Non-Drowsy Products if they had known that they cause drowsiness, and/or (b) they overpaid for the products because they are sold at a price premium due to the misrepresentation.

107.    Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiffs Lamons and Zide, on behalf of themselves and all other members of the California Subclass, seek injunctive relief.

108.    On June 13, 2022, Plaintiffs Lamons and Zide served Defendant with a pre-suit notice letter.  The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiffs and for each member of the California Subclass within 30 days after service of Plaintiffs'

notice letter, Plaintiffs Lamons and Zide and the California subclass will amend their complaint to seek all monetary relief allowed under the CLRA.

## COUNT V

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**Business & Professional Code §§ 17200, *et seq*.**
**(on behalf of Plaintiffs Lamons and Zide and the California Subclass)**

109.    Plaintiffs incorporate by reference and re-alleges each and every factual allegation set forth above as though fully set forth herein.

110.    Defendant is subject to the UCL, Bus. & Prof. Code § 17200 et seq. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for violations.

111.    "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *CelTech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

112.    Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1383 (2012).

113.    Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA, and FAL, as well as by breaching express warranties as described herein. In addition, Defendant engaged in unlawful conduct by violating the California Sherman Act, Cal. Health & Safety Code § 110390, which prohibits drug labeling that is "false or misleading in any particular."

28

114.     Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by using false and misleading statements to promote the sale of the Non-Drowsy Product, as described above.

115.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiffs Lamons and Zide and members of the California Subclass arising from Defendant's conduct outweighs the utility, if any, of those practices.

116.     Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that the Non-Drowsy Products will not cause drowsiness. Defendant's practice of injecting misinformation into the marketplace about the effects of its products is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about its medicines. Taking advantage of that trust, Defendant misrepresents the effects of its Non-Drowsy Products to increase its sales.

117.     Defendant's conduct described herein, violated the "fraudulent" prong of the UCL by representing that the Non-Drowsy Products do not cause drowsiness, when in fact, they do.

118.     Plaintiffs Lamons and Zide and members of the California Subclass are not sophisticated experts with independent knowledge of the side effects of ingredients in the Non-Drowsy Products, and they acted reasonably when they purchased the products based on their belief that Defendant's representations were true.

119.     Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Non-Drowsy Products were untrue and misleading.

29

120.     As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiffs Lamons and Zide and members of the California Subclass have suffered injury and actual out of pocket losses as a result of Defendant's unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiffs Lamons and Zide and members of the California Subclass would not have purchased the Non-Drowsy Products on the same terms if they had known the true facts regarding the effects of the products; (b) Plaintiffs Lamons and Zide and members of the California Subclass paid a price premium due to the misrepresentations of Defendant's Non-Drowsy Products; and (c) Defendant's Non-Drowsy Product did not have the quality and effectiveness or value as promised.

121.     Pursuant to California Business & Professions Code §17203, Plaintiffs Lamons and Zide, and members of the California Subclass are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## COUNT VI

**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**Mich. Comp. Laws Ann. § 445.901, *et seq.***
**(on behalf of Plaintiff Wheeler and the Michigan Subclass)**

122.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

123.     Plaintiff Wheeler brings this cause of action on behalf of himself and members of the Michigan Subclass.

124.     Defendant, Plaintiff Wheeler, and the Michigan Subclass members are "[p]erson[s]" within the meaning of Mich. Comp. Laws Ann. § 445.902(1)(d)

125.    Defendant engaged in "trade or commerce," as defined by § 445.902(1)(g).

126.    The MCPA, (Mich. Comp. Laws Ann. § 445.901, *et seq.*) makes it "unlawful" to engage in "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ."[13]

127.    In the course of its trade, Defendant violated the MCPA by knowingly and intentionally misrepresenting material facts on the labels for its Non-Drowsy Products relating to the appropriate use and "Non-Drowsy" nature of the products. Defendant falsely advertised the Non-Drowsy Products by using false and misleading statements to promote the sale of the Non-Drowsy Products, as described above, including but not limited to, representing that the Non-Drowsy Products were "Non-drowsy" and were for daytime use.

128.    Specifically, by knowingly and intentionally misrepresenting material facts regarding the Non-Drowsy Products, Defendant engaged in one or more unfair or deceptive business practices prohibited by the MCPA.

129.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff Wheeler saw, read, and reasonably relied on the uniform misrepresentations when purchasing Non-Drowsy Products. Defendant's misrepresentations were a substantial factor in Plaintiff Wheeler's purchase decisions.

130.    In addition, reliance can be inferred because Defendant's misrepresentations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to buy the Non-Drowsy Products.

131.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff Wheeler.

---

[13] Mich. Comp. Laws Ann. §445.903(1).

132.     As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff Wheeler and members of the Michigan Subclass have suffered injury and actual out-of- pocket losses because: (a) Plaintiff Wheeler and members of the Michigan Subclass would not have purchased the Non-Drowsy Products if they had known the true facts regarding the products; (b) Plaintiff Wheeler and members of the Michigan Subclass paid a price premium due to the misrepresentations about the products; and (c) the Non-Drowsy did not have the promised quality, effectiveness, or value.

133.     Plaintiff Wheeler seeks injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

## COUNT VII

### UNJUST ENRICHMENT
**(on behalf of the Plaintiffs and the Nationwide Class)**

134.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

135.     Plaintiffs and Class members conferred benefits upon Defendant. Plaintiffs and Class members paid money for Defendant's Non-Drowsy Products that they would not have paid had they known that the products cause drowsiness.

136.     Defendant has unjustly retained the benefits conferred upon by Plaintiffs and Class members.

137.     Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though

Defendant's Non-Drowsy Products cause drowsiness. If Plaintiffs and Class members had known the true nature of Defendant's Non-Drowsy Products, they would not have purchased the products. Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

138.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT VIII

### NEGLIGENT MISREPRESENTATION
**(on behalf of the Plaintiffs and the Nationwide Class or, alternatively, the Florida, California, and Michigan Subclasses)**

139.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

140.    Plaintiffs bring this claim against Defendant on behalf of themselves and the proposed Class.

141.    Defendant has made material misrepresentations of fact concerning the nature of, and ingredients in, the Non-Drowsy Products to Plaintiffs and the Class.

142.    Defendant has and had no reasonable basis for believing that their misrepresentations were true.

143.    Defendant knew, or should have known, that Plaintiffs and the members of the Class would rely on the false representations about the nature of, and ingredients in, the Non-Drowsy Products.

144.    Defendant's false representations about the ingredients of the Non-Drowsy Products are objectively material to reasonable consumers, and therefore reliance upon such representations may be presumed as a matter of law.

145.     Plaintiffs and members of the Class have read and reasonably relied to their detriment on Defendant's false and misleading representations, which caused them to purchase the Non-Drowsy Products.

146.     As a proximate result of Defendant's negligent misrepresentations, Plaintiffs and each member of the Class has been damaged in the amount of the purchase price of the Non-Drowsy Products and any consequential damages resulting from their purchases, including sales tax.

## COUNT XI

**INTENTIONAL MISREPRESENTATION**
**(on behalf of the Plaintiffs and the Class or, alternatively, the Florida, California, and Michigan Subclasses)**

147.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

148.     Defendant has intentionally made material misrepresentations of fact concerning the nature of, and ingredients in, the Non-Drowsy Products to Plaintiffs and the Class.

149.      Defendant knew that the intentional misrepresentations herein were false at the time they were made.

150.     Defendant intended that Plaintiffs and members of the Class would rely on the false representations and purchase Defendant's Non-Drowsy Products.

151.     Defendant's false representations are objectively material to reasonable consumers and therefore reliance upon such representations may be presumed as a matter of law.

152.     Plaintiffs and members of the Class reasonably relied to their detriment on Defendant's intentional misrepresentations.

153.     Defendant's intentional misrepresentations were a substantial factor in causing Plaintiffs and members of the Class to purchase the Non-Drowsy Products.

34

154.    Defendant has acted with malice by engaging in conduct that was and is intended to cause injury to Plaintiffs and the members of the Class.

155.    Defendant has committed fraud through their intentional misrepresentations, deceit, and/or concealment of material facts known to Defendant with the intent to cause injury to the purchasers of the Non-Drowsy Products.

156.    As a proximate result of Defendant's intentional misrepresentations, Plaintiffs and the members of the Class suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

a.      Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

b.      Awarding Plaintiffs and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

c.      Awarding Plaintiffs and the Classes appropriate relief, including but not limited to actual damages;

d.      For declaratory and equitable relief, including restitution and disgorgement;

e.      For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

f.      Awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

g.      Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as

allowable by law;

h.      Awarding pre-judgment and post-judgment interest;

i.      For punitive damages; and

j.      Granting any other relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury of all claims so triable.


Dated: June 14, 2022                          Respectfully submitted,

                                              */s/ Vicki J. Maniatis*
                                              Vicki J. Maniatis
                                              **MILBERG COLEMAN BRYSON**
                                              **PHILLIPS GROSSMAN**
                                              100 Garden City Plaza, Suite 500
                                              Garden City, NY  11530
                                              (516) 640-3913
                                              vmaniatis@milberg.com

                                              Nick Suciu III*
                                              **MILBERG COLEMAN BRYSON**
                                              **PHILLIPS GROSSMAN PLLC**
                                              6905 Telegraph Rd., Suite 115
                                              Bloomfield Hills, MI 48301
                                              Phone: 313-303-3472
                                              Email: nsuciu@milberg.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

Mark S. Reich*
Courtney E. Maccarone
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Phone: 212-363-7500
Email: mreich@zlk.com
Email: cmaccarone@zlk.com

*Counsel for Plaintiffs*

*Pro Hac Vice Application forthcoming.